IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN WHYDE, JR.

                                                    Case No. 3:19 CV 00683

    Plaintiff.

    -vs-                                        Knepp, J.

PAUL SIGSWORTH, et al.,

    Defendants.

_____

**PLAINTIFF'S MEMORANDUM CONTRA HEALTH DISTRICT DEFENDANTS' AND COUNTY'S MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFF'S 2019 CLAIMS UNDER 42 U.S.C. 1983 FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS AND STATE LAW CLAIM**
_____

Sandra J. Finucane (0067063)
Attorney at Law
106 Short Street, Suite 101
Gahanna, Ohio 43230
(614) 855-0123
sjfinucane@ameritech.net

Attorney for Plaintiff John Whyde Jr.

## TABLE OF CONTENTS

I. Factual Overview…………...........................................................................................1

II. Law and Argument...................................................................................................6

      A.     Applicable Legal Standards

           1.     Subjective Component of Deliberate Indifference to Serious
                  Medical needs of Pretrial Detainees under the Fourteenth
                  Amendment…………………………………………..…………….. 6

           2.     Qualified Immunity, Sufficiently Serious Medical Condition, Summary
                  Judgment Standard, Municipal or Official-Capacity
                  Liability………………………………………………..………………..8

      B.     Mr. Whyde showed that Defendants Tesmond, Faulkner, Hartson &
           Olinger acted with reckless disregard to his serious medical needs
           during his 2019 incarceration……………………………………….……...8

           1.     Actionability of Insufficient Medical Treatment…………………………8

           2.     Withdrawal Symptoms………………………………………….……...9

           3.     Underlying Pain from Untreated Injuries & Migraines……………….. 12

      C.     Official policies of the Health District & County, along with a clear
           persistent pattern and practice of not providing necessary medications
           to jail inmates, constitute a moving force behind the constitutional
           deprivation…..…………………………………………………… 18

      D.     The Defendants are not immune from Plaintiffs' state law claims………………19

           1.     Health District and County……………………………………………19

           2.     Tesmond, Faulkner, Hartson & Olinger………………………....…..19

III.     Conclusion…………………………………………………………..… 20

## TABLE OF AUTHORITIES

*Cases:*                                                          *Page No.*

*Alspaugh v. McConnell,*
        643 F.3d 162 (6th Cir. 2011)………………………..……………………………….. 9

*Anderson v. Benton County,*
        Nos. 03-6155-TC, 03-806-TC,
        2004 U.S. Dist. LEXIS 19453,
        2004 WL 2110690 (D. Or. Sept. 21, 2004)…………………………………………………15

*Boretti v. Wiscomb,*
        930 F.2d 1150 (6th Cir. 1991)…………………………..………………………….. 10,14

*Brawner v. Scott Cnty., Tennessee,*
        14 F.4[th] 585 (6th Cir. 2021)……………………………………………………………….7-8

*Briggs v. Westcomb*,
        801 F.App'x 956 (6th Cir. 2020)…………………………………………………..16-17

*Clutters v. Sexton*,
        No. 1:05cv223,
        2007 U.S. Dist. LEXIS 84025 (S.D. Ohio Nov. 2, 2007)……………..……………….…15

*De'lonta v. Johnson,*
        708 F.3d 520, 2013 U.S. App. LEXIS 2005
        2013 WL 310350 (4th Cir. 2013 Jan. 28, 2013) …………………………….…………..9

*Fabrey v. McDonald Village Police Dep't,*
        70 Ohio St. 3d 351, 639 N.E.2d 31 1994 Ohio 368……………………………….   19-20

*Farmer v. Brennan,*
        511 U.S. 825 (1994)………………………………………………………………………..7

*Foelker v Outagamie Cty.,*
        394 F.3d 510 (7th Cir. 2005)……………………………………………………………10-12

*French v. Daviess Cty., Ky.,*
        376 F. App'x 519 (6th Cir. 2010)…………………………..………………………….11

*Greene v. Crawford Cnty.,*
        Nos. 20-1715/1741, 2022 U.S. App. LEXIS 136 ,
        2022 WL 34785 (6th Cir. Jan. 4, 2022)…………………………….………………..6-8

*Griffith v. Franklin Cty.*,
  975 F.3d 554 (6th Cir. 2020)……………………………….…………………….……………6

*Johnson v. Washington*,
  W.D. Ky., No. 4:20-CV-00180 JHM,
  2022 U.S. Lexis 5990(Jan. 12. 2022)…………………………………………………..8

*LeMarbe v. Wisneski*,
  266 F.3d 429 (6th Cir. 2001)………………………………..………………………………9,17

*Mayo v. County of Albany*,
  357 F. App'x 339 (2d Cir. 2009)……………………………………………..…………11

*Parish v. Sheriff of Cook Cty.*,
  N.D.Ill. No. 07 C 4369,
  2019 U.S. Dist. LEXIS 90844 (N.D. Ill.May 30, 2019)………………………..…………16

*Richmond v. Huq*,
  885 F.3d 928 (6th Cir. 2018)……………………………………………….…………… 9,11

*Stojcevski v. Cty. of Macomb*,
  E.D. Mich. No. 15-11019, 2019 U.S. Dist. Lexis 167691
  (Sept. 30, 2019)……………………………………………………………………… 11

*Sylvester v. City of Newark*,
  120 F. App'x 419 (3d Cir. 2005)………………………………………..………………11

*Yeager v. Local Union 20*,
  6 Ohio St.3d 369, 453 N.E.2d 666 (1983)……………………………………………19

*Westlake v. Lucas*,
  537 F.2d 857 (6th Cir. 1976)……………………………………………………….. 14-15

**Constitutions, Statutes & Rules**

U.S. Const., Amend 8………………………………………..…………….…..……..…….*passim*

U.S. Const., Amend. 14…………………………………………..…,,,,.………………….*passim*

42 U.S.C § 1983…………………………………………………………………….*passim*

## I.      Factual Overview

As acknowledged by the Health District ("HD") Defendants, during his 2019 24-day jail stint, Mr. Whyde had verified prescriptions for oxycodone, Gabapentin, methadone and Celexa. He informed the intake nurse, Missy Faulkner, that he was taking these medications, and Nurse Donna Hartson verified these prescriptions with the pharmacies. See, Defendant's MSJ, p. 3; Finucane Declaration, Exh. 1; Health Appraisal Form, Doc. 162-4; Doc. 156 PageID 3264. In fact, Mr. Whyde had his methadone prescription bottle on his person when he was booked into the jail. Jail records show this medication was placed into a medication box by a corrections officer. Booking Form, Doc. #: 162-3, PageID #: 3819.  However, Defendant Nurses Hartson, Faulkner, and Kelly Olinger refused to dispense the oxycodone, Gabapentin or methadone to him because they claimed they not "passed in the jail." Doc. 162-1, PageID ## 3771-3777; Doc. 162-5. This is because the HD has a blanket policy against dispensing those medications to inmates. See, *id.*; Docs. 137-6; 137-7; HD Defendants' MSJ, p. 3; Whyde Declaration, attached. In fact, the HD formally admitted it has a policy prohibiting any opioids (which would include oxycodone), methadone or Zomig (a migraine medication) to be dispensed to inmates while they are housed in the jail. See, Responses to Plaintiff's Requests for Admissions, Docs. 137-6; 137-7. The Jail Doctor, Anthony Tesmond, also testified that there is a "policy preference" against dispensing all controlled substances such as Gabapentin, methadone or oxycodone to inmates because they might use them as currency or for self-harm. Doc. 159, PageID # 3527.

Mr. Whyde, however, was prescribed opioids, methadone and Gabapentin for severe long-standing chronic pain. He had injured his back lifting pipe at work in 2003, and nearly lost his leg in a motorcycle accident in 2014 which required numerous surgeries. See, Whyde Depo, Doc. 150, PageID # 3119, Doc. 110, PageID ##556-58; Whyde Declaration (attached); Expert

Report, Doc. 137-5. Neurologist Dr. William Bauer testified he was treating Mr. Whyde for pain related to damage to his left leg, ankle and both knees, and for back pain. Bauer Depo. Doc. 133, PageID ## 1494-95, 1504, 1507. Mr. Whyde has a long-documented history of being prescribed narcotic pain medications to manage and treat his injuries. See, *id*., Doc. 137-5. This is not in dispute. Moreover, Bauer, as part of Mr. Whyde's treatment plan for (1) pain and (2) opioid dependence, had been in the process of weaning Mr. Whyde from higher doses of opioids to lower levels of oxycodone plus methadone until, eventually, he would be off all opioids. Doc 133, PageID # 1502; Finucane Declaration, Exh. 2**.** However, the HD doctor and nurses interfered with Mr. Whyde's provider's treatment plan, and due to policy, not an individualized assessment, cut Mr. Whyde off his all his narcotic pain medicines, refusing to even give him his prescribed Gabapentin for pain. See, Doc.162-1; Doc.162-5; Whyde Declaration; Finucane Declaration, Exh. 3; Tesmond Depo, Doc.159, PageID ## 3481-3500.

Mr. Whyde had also been suffering severe migraine headaches since his 2017 incarceration when his head was hit against the wall, and was prescribed different medications for them at various times. Expert Report, Doc. 137-5; Whyde Declaration. Mr. Whyde informed the booking officer that he suffered head trauma in 2017. Doc. 162-3, PageID # 3823. Mr. Whyde experienced excruciating migraines while he was in the jail during his 2019 stint. *Id.* He repeatedly requested his current migraine medication, Zomig, a non-controlled substance, along with Gabapentin from the all of the defendant nurses (Missy Faulkner, Donna Hartson and Kelly Olinger) to treat his pain but they refused to give either medication to him, citing policy. Doc. 162-1; Doc. 162-4; Doc. 162-5, Bates D02074; Whyde Declaration.

Contrary to Defendants' contention that Mr. Whyde did not ask for his migraine medicine until September 4, 2019, the evidence shows that at some point during his medical segregation,

which ended on August 27, 2019, Mr. Whyde had already complained of having suffered a migraine and informed the nursing staff he needed his prescribed Zomig. See, Doc. 162-1; Doc.162-5, D02074.  He stated in his grievance dated September 3 (not 9/4) which was directed to Lt. Casey Proy that he needed his prescribed Zomig and Methadone for "head trauma" and that he was having "severe headaches," but was "told by medical staff" he wasn't allowed to have it. Doc. 162-5 at Bates 2073. Whyde's other grievances to Lt Proy show the date of the "original grievance" regarding the Zomig was "9/3/19." *Id.* at Bates D02081. While the nurse notes say Mr. Whyde did not raise the issue of migraine medication until 9/4/19, in one of his other grievances to Lt. Proy, dated 9/6/19, Mr. Whyde stated that he had thought he had requested his Zomig during booking, but he did ask for it while he was *still in medical segregation*. *Id.* at Bates 2073. That means that Mr. Whyde would have brought it up before August 27, because the nurse notes show he was not moved out of segregation into general population on August 27, 2019. Doc. 162-1.  An entry on 9/5/19 in the progress notes shows that Mr. Whyde asked for his Gabapentin and migraine medication on that date, and Nurse Olinger wrote, "Inmate was informed multiple times that medication is not passed here." Doc. 162-1.

Mr. Whyde's injuries, moreover, along with his chronic migraine headaches and traumatic brain injury, were aggravated by the fact that Erie County Deputy Tim Bunting, with the assistance of Dpty Daniel Orzech, assaulted him before his admission to the Jail on August 24, 2019. Bunting knocked him down, choked him, hit him on the head with a flashlight, and used his body weight to press his knee and elbow into Mr. Whyde's head. See, Expert Report, Doc. 137-5; Body Camera Video # 1. After this encounter, Mr. Whyde was taken by ambulance to Firelands Hospital where he complained of experiencing severe head and neck pain, and his blood pressure was 214/109. Doc. 156, PageID ## 3319-20. Faulkner testified that high blood

pressure may be caused by pain, among other things. *Id.* The hospital faxed his emergency room medical record to the jail, and it was accessed by the HD nursing staff. *Id.* at 3319-20.

Dr. Tesmond was aware of the fact that Mr**.** Whyde was suffering from frequent debilitating migraines, that he was requesting medicines including Zomig and Gabapentin and wanted to see him. However, Tesmond failed to see Mr. Whyde, prescribe either medication or arrange for outside treatment. Doc. 159, PageID ## 3481-3500.

At one point, when he was still in medical segregation, Mr. Whyde hit the call button and demanded the corrections officers take him to the hospital, but they would not. Doc # 162-5, PageID #: 3829. Mr. Whyde's mother also called in to complain that her son had brain damage, was having severe headaches and needed his headache medications, as is reflected in Nurse Faulkner's notes. See, Doc. 162-1. The nurses repeatedly informed Mr. Whyde that he could not receive his Zomig because "migraine" medications were available in the jail. *Id.*

On 9/7/19, over two weeks after Mr. Whyde was booked into the jail, and after the nursing staff *repeatedly informed* Mr. Whyde he could not receive migraine medication or Gabapentin, Nurse Hartson provided Mr. Whyde with a medical records release form, and purportedly told Mr. Whyde that if he would sign that, she would give it to the jail doctor -- and, once the medical records were both obtained and reviewed, he *might* be able to receive some sort of alternative treatment. Doc. 162-1. She did not inform him he could receive his prescribed Gabapentin or Zomig, *Id.* Mr. Whyde wanted to review it with his attorney first. *Id.*; Whyde Declaration. While he was trying to contact his attorneys, Mr. Whyde informed Nurse Faulkner that he would sign any pharmacy release that would enable the staff to confirm his Zomig prescription. Doc. 162-1; Doc. 156, PageId ## 3264. There was a delay of at least 11 days between the time Mr. Whyde began pleading for relief before any nurse ever presented him with

the form. Whyde Declaration. Moreover, Mr. Whyde *had already signed a medical release form* at booking, not initially when he was booked while intoxicated, but later the same day. Doc. 162-3, PageID# 3824. This is apparently what the nurses use to obtain the pharmacy information as well, because it is the only release form in the jail which has been presented in discovery. It pertains to all of the inmate's "medical" and "mental" health care conditions. *Id.* So, the jail doctor, Tesmond, already had the ability to obtain these records.

Furthermore, Mr. Whyde's father brought the prescribed Zomig to the jail on September 13, 2019, but Nurse Faulkner informed him the policy of the jail was that outside medications were not allowed. Finucane Declaration, Exh. 4; Doc. 162-1. None of the nurses arranged for Mr. Whyde to be admitted into the hospital or any other facility for detoxification or for treatment of his migraines. Dr. Tesmond never visited Mr. Whyde, and Tesmond refused to evaluate him or consider any alternative treatment for Mr. Whyde's migraines unless he signed a medical release form, even though he had already signed one. All of the discussion about the release form is a distraction anyway, given the fact that the HD admitted, in response to Plaintiff's Request for Admission #5, that Zomig was not allowed to be dispensed in the jail as a matter of policy (just as the nurses had repeatedly informed Mr. Whyde). See, 137-7. The same ban applied to opioids, benzodiazepines and methadone. *Id.*, see also 137-6. The decision to withhold Mr. Whyde's migraine medication thus had nothing to do with Mr. Whyde's pain levels or what he required, or anything to do with him refusing to sign any medical records release. Furthermore, the release was only brought up late into Mr. Whyde's incarceration, after he had been complaining of migraines for at least 11 days.

Also, the attempt to shift blame to Mr. Whyde for not signing a release, even it passes muster (which it doesn't), only has to do with Mr. Whyde's migraine medication, not his other

5

pain medications, i.e. Gabapentin, oxycodone, or Methadone. The HD simply relies on its policies to justify withholding these medications. Mr. Whyde suffered from withdrawal from the deprivation of these three medicines and pain from the underlying conditions they are used to treat. Whyde Declaration. Mr. Whyde was given only Tylenol, and that was only available 3 times per week after his withdrawal protocol period ended. And it was not dispensed at night. *Id.*, Finucane Declaration, Exh. 3; Doc. 162-2, PageID 3788 (HD Policies concerning administration of acetaminophen); Doc. 162-1 (see 9/7/19 and 9/15/19 entries). Mr. Whyde let nurse Faulkner, Hartson and Olinger know that the Tylenol did not cover his pain. Doc. 162-1; Doc. 162-5; Whyde Declaration. It did not cover his pain or withdrawal symptoms. See, *id.* He was sweating, nauseated, had a stomachache and suffered from diarrhea due to withdrawal. Whyde Declaration. These symptoms were most severe during the first few days but continued throughout his entire incarceration. *Id.* He also suffered constant throbbing pains in his legs and back continuously due to his pain medications being withheld. *Id.*

## II.    Law and Argument

### A.    Applicable Legal Standards

#### 1.    Subjective Component of Deliberate Indifference to Serious Medical Needs of Pretrial Detainees under the Fourteenth Amendment

"[P]retrial detainees have a constitutional right to be free from deliberate indifference to serious medical needs under the Due Process Clause of the Fourteenth Amendment." *Greene v. Crawford Cnty.*, Nos. 20-1715/1741, 2022 U.S. App. LEXIS 136, 2022 WL 34785, at *7 (6th Cir. Jan. 4, 2022). While that is not in dispute, the Defendants cite the wrong standard for determining deliberate indifference in the Sixth Circuit. In f.n. 4, they state that in *Griffith v. Franklin Cty.*, 975 F.3d 554 (6th Cir.2020), the Sixth Circuit has "adopted the [8th Amendment] deliberate indifference test wholesale for purposes of the Fourteenth Amendment." In the

recently-decided case of *Greene,* the Sixth Circuit clarified that its more recent holding

of *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021) governs, which modifies

the Eighth Amendment test.  *Id.* at *19-23. The *Greene* Court noted that until recently, the Sixth

Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment

prisoner claims 'under the same rubric.'" *Id.*, citing *Brawner*, 14 F.4th at 591. The Eighth-

Amendment framework for deliberate indifference claims has an objective and a subjective

component. *Griffith*, 975 F.3d at 567; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The

objective component requires a plaintiff to prove that the alleged deprivation of medical care was

serious enough to violate the [Constitution]." *Griffith*, 975 F.3d at 567. The subjective

component requires a plaintiff to show that "each defendant subjectively perceived facts from

which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he

then disregarded that risk by failing to take reasonable measures to abate it." *Id.* at 568 (citation

omitted). As the Court observed in *Greene*, "[t]his is a high standard of culpability, "equivalent

to criminal recklessness.'" *Id.*

As the *Greene* Court explained, though, the Sixth Circuit's "opinion in *Brawner* changed

things." *Id.* at *20. The Eighth Amendment prohibits cruel and unusual punishment, but pretrial

detainees (unlike convicted prisoners) cannot be punished at all[.]" *Kingsley* at 400-01 (holding

that in excessive force claims for pretrial detainees, force is excessive if it is objectively

unreasonable). However *Kingsley* did not "address whether an objective standard applies in other

Fourteenth Amendment pretrial-detainment contexts[,]" such as the claim at issue here:

deliberate indifference." *Greene* at *21, citing *Brawner*, 14 F.4th at 592.  The majority opinion

in *Brawner* concluded that *Kingsley*'s reasoning required "modification of the subjective prong of

the deliberate-indifference test for pretrial detainees." *Id.* at 596. ("Given *Kingsley*'s clear

delineation between claims brought by convicted prisoners under the Eighth Amendment and claims brought by pretrial detainees under the Fourteenth Amendment, applying the same analysis to these constitutionally distinct groups is no longer tenable.") (citations omitted).

As explained in *Greene, Brawner* modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness: "A pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Greene* at 22, citing *Brawner*, 14 F.4th at 596-97; See also *Johnson v. Washington*, W.D.Ky. No. 4:20-CV-00180-JHM, 2022 U.S. Dist. LEXIS 5990, at \*4-5 (Jan. 12, 2022).

> **2.      Qualified Immunity, Sufficiently Serious Medical Condition, Summary Judgment Standard, Municipal or Official-Capacity Liability**

In order to avoid redundancy, Plaintiff hereby incorporates fully by reference herein pages 7-4 of his Response to the Defendants' Motion for Summary Judgment on his 2017 claims, where these standards were set forth previously. See, Doc. 137, PageID ## 1573-74, 1578-80.

> **B.      Mr. Whyde showed that Defendants Tesmond, Faulkner, Hartson & Olinger acted with reckless disregard to his serious medical needs during his 2019 incarceration**.

> **1.      Actionability of Insufficient Medical Treatment**

The failure of the HD Defendants, Tesmond, Faulkner, Hartson and Olinger, to dispense Mr. Whyde's prescribed Methadone, Gabapentin, Oxycodone, or Zomig, or to provide him with substitute medication or treatment to sufficiently address his pain and withdrawal, constitutes deliberate indifference. The Defendants argue that as long as an inmate receives some type of medical treatment, whether it is effective or not, he has no claim for deliberate indifference.[1] This is not true. Even under the old deliberate indifference standard courts have held "treatment

---

[1] The Defendants rely on the outdated case law as well, which imposes a stricter standard for establishing the subjective component of deliberate indifference. See, *Greene v. Crawford Cnty.*, *supra.* Plaintiffs cite these cases too, because they establish that even convicted prisoners are entitled to care that was denied Mr. Whyde. There are not many new cases applying the new standard yet.

8

may be constitutionally impermissible" when it is "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).

It is insufficient for a doctor caring for inmates to simply provide some treatment for the inmates' medical needs; rather, "the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm." *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir.2018), citing *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001). "Further, both insufficient treatment and a delay in giving treatment may violate the Eighth Amendment." *Id.* In *Huq*, the Court held that the plaintiff "need not show that any of the Jail staff consciously ignored her, "only that [her] serious medical needs were consciously disregarded." *Id.* See also *De'lonta v. Johnson*, 708 F.3d 520, 2013 U.S. App. LEXIS 2005, 2013 WL 310350, at *5 (4th Cir. 2013 Jan. 28, 2013) ("We do, of course, acknowledge that Appellees have provided De'lonta with some measure of treatment to alleviate her GID symptoms. But just because Appellees have provided De'lonta with *some* treatment consistent with the GID Standards of Care, it does not follow that they have necessarily provided her with *constitutionally adequate* treatment.").

## 2. Withdrawal Symptoms

Mr. Whyde was arrested on the night of August 23, 2019, taken to the hospital, and then transferred to and booked into the jail in the very early hours of August 24, 2019. When he was assessed by Faulkner who performed the health assessment on the 25th, she was made aware of the fact that he was on Methadone (he had his medication on him), Gabapentin, and oxycodone, and that he had a head injury and leg damage, *inter alia*. Doc. 156, PageID 3267, 3270-71.

Instead of providing Mr. Whyde with his prescribed Methadone, Oxycodone or Gabapentin, Faulkner instead put him on a withdrawal protocol in which he was provided

Tylenol, Maalox, antacid and other over-the-counter medications which did not alleviate his pain or prevent significant withdrawal symptoms. Whyde Declaration. Faulkner testified that she was aware that the symptoms of opiate withdrawal include cold sweats, headaches, diarrhea and nausea. Doc. 156, PageID 3266. Dr. Tesmond was also aware of Mr, Whyde's request for Gabapentin and Zomig, although he later wrongly testified that none of Mr. Whyde's medications could even be considered to treat his pain since only the Celexa prescription had been verified because Mr. Whyde had refused to sign a release. Doc 159, PageID ## 3462-3500, 3512-15. Defendants falsely claim Mr. Whyde was on the doctor board on 8/28, 9/4, and 9/11 but his appointments had to be cancelled because he did not sign a release. They are relying on Faulkner's notes and entry made on 9/11/19, but no release was even discussed with Mr. Whyde until 9/7/19, which the notes *clearly* show. See, Doc.162-1. The notes show he was repeatedly simply informed that his pain medications and migraine medications were "not passed" at the facility and there isn't a mention of any release until Nurse Hartson brought it up for the first time on the 7th. And again, Mr. Whyde *had already signed a release*, which is why the nursing staff *was able to verify his other prescriptions* (and presumably how they obtained his Firelands emergency room records). So, for whatever reason, Dr. Tesmond just refused to see him and/or the nursing staff never actually scheduled those visits.

The Sixth Circuit recognizes that the "interruption of a prescribed plan of treatment could constitute a constitutional violation." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991) (citing *Estelle*, 429 U.S. at 105). Both methadone (an opioid-like narcotic) and oxycodone (an opioid) are addictive substances. Forced withdrawal from such substances violates a pretrial detainee's right not to be punished. *See Foelker v Outagamie Cty.*, 394 F.3d 510, 511-13 (7th Cir. 2005) (concluding that delirium and other symptoms from methadone withdrawal created a

serious medical need). Courts have held that depriving inmates of prescribed controlled substances constitutes deliberate indifference even where the stoppage did not create significant withdrawals if the medicines were part of a preexisting prescribed treatment plan for a condition which existed before the inmate entered the jail. For example in *Richmond v. Huq*, 872 F.3d 355 (6th Cir. 2017), the Sixth Circuit held that a jail medical staff's decision to deprive an inmate of her prescribed psychiatric medicines for bipolar disorder which included Xanax and Prozac, constituted deliberate indifference sufficient to survive a motion for summary judgment even though no facts were presented to suggest she went through significant withdrawal in jail.

Mr. Whyde, however, did suffer withdrawal. The withdrawal symptoms he suffered from which began on August 24, 2019 included nausea, sweating and diarrhea -- and, although they were most severe for the first few days, persisted throughout his 24-day stay. Whyde Declaration. His symptoms were noted by Faulkner and Olinger in his blood flow pressure chart, but not to the extent he experienced them. See, Finucane Declaration, Exh. 5; Doc. 162-1. "Withdrawal symptoms qualify as a serious medical need." *French v. Daviess Cty., Ky.*, 376 F. App'x 519, 522 (6th Cir. 2010) (unpublished); *Mayo v. County of Albany*, 357 F. App'x 339, 341-42 (2d Cir. 2009) (unpublished) (heroin and alcohol withdrawal); *Sylvester v. City of Newark*, 120 F. App'x 419, 423 (3d Cir. 2005) (unpublished) (acute drug withdrawal); *Foelker v. Outagamie Cty.*, 394 F.3d 510, 513 (7th Cir. 7005) (methadone withdrawal); *Stojcevski v. Cty. of Macomb*, E.D.Mich. No. 15-11019, 2019 U.S. Dist. LEXIS 167691 (Sep. 30, 2019) (opioid and benzodiazepine withdrawal). Even in cases where an inmate was removed from his treatment regimen prescribed by outside doctors, but was provided *inadequate lower dose narcotics in jail*, causing withdrawal symptoms, Courts have found in favor of the plaintiff under Section 1983. See, *Foelker,* 394 F.3d *at* 511-14 (Court held reduced methadone dosages which caused

withdrawal symptoms including defecation, confusion, disorientation and hearing voices should not have been short circuited on summary judgment).

### 3.    Underlying Pain from Untreated Injuries & Migraines

Mr. Whyde not only suffered from withdrawal but also experienced "a constant throbbing pain in [his] back, left leg, ankle and knees continuously" because he was denied all of his prescription pain medication. He also experienced debilitating migraines. Whyde Declaration. Tylenol, which was offered on a limited basis (3x per week) after his withdrawal protocol ended was not sufficient to control or even lessen his pain at times. *Id.*

The inmate progress notes from September 4, 2019, reflect that Mr. Whyde asked Nurse Hartson why he was not permitted to see the doctor and why he wasn't receiving his Gabapentin and Zomig (a non-controlled substance) for his head trauma-related migraines. Nurse Hartson replied that there were "no changes" to his medicines. See, 162-1. She also told him "we did not do migraine medications here and I'm sorry for the inconvenience." *Id*. Hartson did not address why the doctor had not seen Mr. Whyde. *Id.* The progress notes are replete with Mr. Whyde's requests for his migraine and other pain medications, which he made to Nurses Olinger, Hartson and Faulkner. *Id.;* Whyde Declaration.

Dr. Tesmond had 2-year contract with the Health District to provide health care services to Erie County Jail inmates. Doc. 159, PAgeID ## 3467-68. He was aware of the fact that Mr. Whyde was suffering from migraines and wanted to see him. Doc. 159, PageID ## 3462-3500. Tesmond also knew Mr. Whyde was requesting Zomig and Gabapentin to alleviate his severe migraines. *Id.* Tesmond testified that he did not dispense the Zomig or any other alternative prescription migraine medication to Mr. Whyde because he refused to sign a medical release, so Tesmond did not have his history. *Id.* Yet Dr. Tesmond acknowledged that, as jail doctor, he

could have conducted an independent evaluation of Mr. Whyde and prescribed him medication without receiving his prior history from his treating physician. Doc. 159, PageID # #3504-05, 3509. He admitted that if an inmate is in severe pain an independent evaluation by the jail doctor "could be warranted" but it was not done in this case. 3509. Tesmond never met with Mr. Whyde during his 24-day stay. *Id.* at PageID 3471. Moreover, Tesmond conceded that some types of migraine headaches don't respond well to ibuprofen or Tylenol, which were the only pain medicines offered at the jail. *Id.* at PageID ## 3507-08.

Dr. Tesmond made his decisions not to aid Mr. Whyde based on his false claim that Mr. Whyde's prescription for Gabapentin had not been verified because he didn't sign a release. *Id.* at 3512-13. As discussed above the doctor likewise falsely testified that the HD staff was only able to confirm Mr. Whyde was on Celexa and nothing else, when they also confirmed he had current prescriptions for Methadone, Gabapentin and oxycodone. *Id.* at 3514. Again, contrary to Tesmond's testimony, Mr. Whyde had signed a general release on August 24, and per the nurse's notes agreed to sign another release for pharmacy records. *Id.* at 3514. Nonetheless, Tesmond failed to evaluate Mr. Whyde or prescribe his Zomig or any medication to alleviate his migraine pain although the over-the-counter medicine was not working. In any event, Tesmond would most likely not have given Mr. Whyde his Gabapentin even if he signed another release because according to Tesmond, Gabapentin was a "medication we probably would not have used" for pain. *Id.* at 3512.

Furthermore, the nurses did not treat Mr. Whyde with alternatives available to them. Per Tesmond's testimony, he was only at the jail for a couple hours a week and that in emergent situations it is the responsibility of the nursing staff to evaluate inmates to determine the extent and severity of their pain (including migraine pain), and they may send inmates to the emergency

13

room for treatment. *Id.* at 3506.  Jail policy also specifically states that a nurse can make a decision that pain is an emergency and arrange for treatment at the hospital through the Sheriff's Office without involving the jail doctor. Doc # 162-2, PageID #: 3779.

Despite these circumstances, the Defendant nurses did not arrange for emergency treatment for Mr. Whyde for his migraines, the doctor did not evaluate him, and both the nurses and doctor used a false premise to delay and avoid providing him with migraine medication when they knew the Tylenol was working. Even had Mr. Whyde signed another release, this Court can take judicial notice of the fact that provider medical records do not immediately materialize the moment they are requested. There are delays involved, and the jail doctor would have also required time to review them once received. By the time all of that was accomplished, Mr. Whyde would likely have already been released (he was released on 9/16/19).

Nurse Faulkner claimed that she would not consider a migraine, no matter its severity, to constitute an emergency unless the inmate was simultaneously having seizures and vomiting. Doc.156, PageID ##3312-14. Short of that she said the nursing staff would first attempt 10-minute monitoring combined with stimuli reduction, such as dimming the lights, for an inmate in severe pain. But Mr. Whyde was not provided this alternative treatment either. *Id.*

The Sixth Circuit has held that the denial of prescription pain medication can form the basis of a finding of deliberate indifference. See, *Boretti v. Wiscomb,* 930 F.2d 1150, 1154-55 (6th Cir. 1991). In *Boretti*, the Court concluded there were genuine issues of material fact as to whether a prison nurse wantonly interrupted a prescribed plan of treatment when she refused to give a prisoner his prescribed pain medication. *Id.* at 1156. *Boretti* relied on *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976), in which the Sixth Circuit had previously held that a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those

14

whose deliberate indifference is the cause of his suffering. *Id.* The Court noted that the Supreme Court in *Estelle* cited *Westlake* in finding that "unnecessary suffering which results from a denial of medical care is inconsistent with contemporary standards of decency." *Id.* at 1155, *citing* 429 U.S. at 103. Likewise in *Clutters v. Sexton*, No. 1:05cv223, 2007 U.S. Dist. LEXIS 84025, at *24-27 (S.D. Ohio Nov. 2, 2007) the Court concluded that the withholding of an inmate's prescribed opioid medications constituted deliberate indifference where he suffered pain and withdrawal before he died in the jail due to a separate head injury.

Summary judgment was likewise denied in *Anderson v. Benton County*, Nos. 03-6155-TC, 03-806-TC, 2004 U.S. Dist. LEXIS 19453, 2004 WL 2110690 (D. Or. Sept. 21, 2004), where the plaintiff was serving a ten-day incarceration for DUI. He had been prescribed oxycodone, methadone, and gabapentin as painkillers for "extreme back and knee pain." *Id.* at *1**.** Upon his arrival at the county jail, a prison physician, *who did not examine plaintiff*, prescribed only oxycodone and gabapentin, but not methadone. After two days, plaintiff started to go through withdrawal, and was started on Keopectate for diarrhea. For the next two days, his requests for methadone were denied; he eventually was placed in the hospital after he reinjured his back, unrelated to his drug withdrawal. Jail staff testified that plaintiff did not have any symptoms of withdrawal while he was in jail; plaintiff submitted expert medical opinions regarding the severe withdrawal symptoms that arise from cessation of methadone, even with the administration of oxycodone, as well as his testimony of twitching and feeling like he was dying. *Id.* at *4-6. The magistrate judge therefore found that summary judgment was inappropriate in that "a reasonable factfinder could find that the doctors or the jail staffs were deliberately indifferent to [plaintiff's] serious medical needs." *Id.* at *6. These cases stand for the proposition that jail medical staff act with deliberate indifference if they stand idly by while an inmate

15

suffers pain and withdrawal from the deprivation of his narcotic pain prescriptions. This is exactly what happened to Mr. Whyde.

As discussed above, Tesmond and the defendant nurses failed to act for at least 11 days while Mr. Whyde suffered migraines needlessly, and then they demanded he sign a release as condition for some unspecified alternative -- which, even if he complied, would have resulted in more delay. They offered nothing for his leg and back pain beyond ineffective over-the-counter medication. Delay in treating in an inmate who is suffering pain states a claim for deliberate indifference. The practice of delaying administration of medications which were prescribed to inmates prior to their admission to the jail "without the benefit of an in-person evaluation by a licensed medical professional," and the practice of tapering inmates from methadone over a 21-day period, has been held to constitute evidence of deliberate indifference sufficient to overcome summary judgment. This was the scenario in *Parish v. Sheriff of Cook Cty*., N.D.Ill. No. 07 C 4369, 2019 U.S. Dist. LEXIS 90844, at *1-2 (N.D. Ill.May 30, 2019), where the inmates were given a controlled substance, methadone, but they still suffered withdrawal because it was tapered and they were weaned off it when they should have been kept on it in the absence of an independent evaluation, and the short weaning period caused suffering among the inmates. One of the inmates, for example, testified the that he "experienced to aching in his knees, sweating, chills, vomiting, and hallucinations." *Id.* at *9.

The case of *Briggs v. Westcomb*, 801 F.App'x 956, 959-960 (6th Cir.2020) is also illustrative. In that case, a diabetic inmate received treatment in the form of insulin, but the defendant physician assistant did not increase the dosages when it became apparent that the inmate was suffering adverse events from not receiving enough. The inmate alleged that as a result of his decreased insulin dosage he experienced "cysts, constant urinating, and kidney

pains." The Court found these circumstances "sufficient to state a claim." *Id.* at 959-60. The Court observed, "We have long held that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Id.*, citing *Boretti.* 930 F.2d at 1154-55. "[B]oth insufficient treatment and a delay in giving treatment may violate the Eighth Amendment." *Id.* citing *See Lemarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

In the case at bar, there was both insufficient treatment and a delay in providing treatment to Mr. Whyde in violation of the Fourteenth Amendment "reckless disregard" standard. He suffered pain needlessly when relief was readily available, which is not permitted even under the Eighth Amendment. The following conduct constitutes deliberate indifference:

*Informing Mr. Whyde when he asked for his Zomig that "migraine medications" were not "passed" in the jail from the time he was in segregation from around 8/27/19 until 9/7/19

*The limited administration of Tylenol to 3x per week for pain when Mr. Whyde was experience migraines

*Nurses refusing let Mr. Whyde have Tylenol at night when he asked for it for his migraines

*Conditioning the possibility of Whyde obtaining medication to treat severe pain on signing a release (which he had already signed)

*Delaying and conditioning his ability to see the jail doctor on signing a release (which he had already signed)

*Delaying possibility of providing migraine medicine on signing a release

*Defendant nurses failing to arrange for emergency treatment <u>or</u> 10-minute monitoring with stimuli reduction when he was suffering severe migraines

*Jail doctor failing to evaluate Mr. Whyde during the entire 24-day stint

*Jail doctor failing to prescribe some type of medication to control the migraine pain

*Jail doctor interfering with existing treatment plan for Mr. Whyde's pain and opioid dependency issues by withholding Mr. Whyde's verified prescriptions for Gabapentin,

methadone and oxycodone, which caused him to suffer throbbing pain in his leg, back and knees and withdrawal symptoms which included nausea, diarrhea and excessive sweating.

*Forced withdrawal of a pretrial detainee who is not subject to punishment under the Eighth Amendment

For the foregoing reasons, Defendants Tesmond, Faulkner, Olinger and Hartson are not entitled to summary judgment, construing the facts in the light most favorable to the Plaintiff.

**C.    Official policies of the Health District & County, along with a clear persistent pattern and practice of not providing necessary medications to jail inmates, constitute a moving force behind the constitutional deprivation.**

The HD admitted in Response to Plaintiff's Requests for Admissions, that it had an official policy in place during the relevant period in 2019 which prohibited inmates at the Erie County Jail from receiving any opioid or methadone prescriptions while housed in the facility. The HD admitted Mr. Whyde was not permitted to receive his Zomig due to official policies. The nurses informed him repeatedly that Gabapentin (a controlled substance) and migraine medications were not passed in the jail.

These bans are the moving force behind Mr. Whyde not being able to receive his oxycodone, an opioid, his methadone, Gabapentin or his Zomig while he was incarcerated. Such blanket policies denying inmates' opioids, methadone, benzodiazepines and other medications in similar contexts have been held to constitute unconstitutional policies amounting to deliberate indifference. In order to avoid redundancy, Plaintiff hereby incorporates fully by reference herein pages of his Response to the HD Defendants' Motion for Summary Judgment on the 2017 claims, where the relevant law on this issue was set forth previously. See, Doc.137, PageID ## 1611-17.

Additionally, a second moving force behind the constitutional deprivation is the HD's clear persistent pattern and practice of not providing necessary medications to jail inmates. Plaintiff incorporates fully by reference herein the relevant portion of his Response to

Defendants' Motion for Summary Judgment on his 2017 claims where he previously addressed this issue. See, Doc.137, PageID ## 1617-20. Other evidence of this pattern exists. For example, the Health District apparently settled a lawsuit brought by an Erie County jail inmate whose right foot and leg were amputated because, despite his repeated requests, its nursing staff delayed medical timely treatment to him. The case was removed to this Court in Case No. 3:15-cv-01331.

The County is liable for the same reasons and to the same extent as the Health District, as explained in Doc. 137, PageID ## 1620-21, incorporated herein fully by reference.

### D. The Defendants are not immune from Plaintiffs' state law claims.

#### 1. Health District and County

Plaintiff incorporates fully by reference herein the argument set forth in Doc. 137, PageID # 1622 concerning political subdivision immunity under Ohio law.

#### 2. Tesmond, Faulkner, Hartson & Olinger

Defendants Tesmond, Faulkner, Hartson and Olinger are not immune from liability from Plaintiff's intentional infliction of emotional distress ("iied") state law tort claims because public employees do not enjoy statutory immunity where their conduct is deemed reckless, and whether conduct is reckless is generally an appropriate inquiry for the trier of fact. See, *Fabrey v. McDonald Village Police Dep't,* 70 Ohio St. 3d 351, 639 N.E.2d 31,35, 1994 Ohio 368. A claim for iied lies where "'(o)ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 453 N.E.2d 666, at syllabus. Summary judgment is not appropriate for those defendants because there is a genuine issue of material fact as to whether they acted with "reckless disregard," in response to Mr. Whyde's serious medical needs under the Fourteenth Amendment. The standard under *Fabrey* is coextensive with the federal standard for deliberate indifference of

pretrial detainees' medical needs. Tesmond refused to see Mr. Whyde or evaluate him, prescribe medication, and failed to arrange for him to be sent to the emergency room for treatment for his pain, withdrawal or recurring severe debilitating migraines. Without evaluating him, based on a false premise, Tesmond interrupted Mr. Whyde's treatment plans and substituted his own judgment for that of Mr. Whyde's treating physicians.

Faulkner, Hartson and Olinger refused to allow Mr. Whyde to even have acetaminophen at night or more than 3 times per week --after the withdrawal protocol ended for his migraines. They also could have, but did not, refer him to emergency care for withdrawal and treatment of his migraines, despite being apprised of his history of head trauma. All of the Defendants delayed and denied him treatment for migraine pain and conditioned treatment on his failure to sign a release he had already signed. Moreover, they failed to provide 10-minute monitoring or stimuli reduction or anything other than a very limited amount of Tylenol for his pain.

Viewed in the light most favorable to the Plaintiff, these reckless acts and omissions constitute intentional infliction of emotional distress.

## III.  Conclusion

For the foregoing reasons, this Court should deny the Defendants Tesmond, Faulkner, Hartson, Olinger, the Health District and the County summary judgment on Plaintiff's claims.

Respectfully submitted,

s/ Sandra J. Finucane
Sandra J. Finucane (0067063)
Attorney at Law
106 Short St. Ste. 101
Gahanna, OH  43230
(614) 855-0123
sjfinucane@ameritech.net

Attorney for Plaintiff John Whyde Jr.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served electronically on all counsel and of record on this 16th day of February 2022.

<u>s/ Sandra J. Finucane</u>
Sandra J. Finucane